## FLEMING v. GEORGIA RAILROAD BANK.

1. Where one borrows money from a bank to pay for land, causes a conveyance of the land to be made to the bank, and gives his note to the bank, containing a recital that it is secured by the deed, such conveyance, though absolute on its face, is a deed to secure the payment of the loan.
2. No subsequent indebtedness of the borrower to the bank is secured by the deed, unless there is a written agreement that such indebtedness shall thereby be secured.
3. The stipulation in the note given for the subsequent indebtedness had no reference to the security deed, and was not an agreement that such indebtedness should be secured by the deed.
4. The petition set forth a good cause of action, and the court erred in sustaining the demurrer thereto.

Argued July 16, — Decided August 12, 1904.

Equitable petition.    Before Judge Gary.    Richmond superior court.    January 21, 1904.

*William H. Fleming*, for plaintiff.
*Joseph B. & Bryan Cumming*, for defendant.

Evans, J.    Frank E. Fleming filed his petition against the Georgia Railroad Bank, alleging, substantially :    On August 26, 1901, Antoine P. Carr purchased from John W. Dickey, for the sum of $3,030, a certain lot of land in the city of Augusta (described by metes and bounds).    The deed to this lot was, at the direction of Carr, made to the defendant bank in order to secure a promised loan by it to Carr of $1,000.    Dickey had no negotiations at all with the bank concerning such sale or conveyance.    On August 31, 1901, the Georgia Railroad Bank fulfilled its promise and made the loan to Carr, accepting delivery of the deed as security therefor ; but the deed was not recorded until February 18, 1903. On November 25, 1901, Carr paid off the balance of the loan he

procured from the defendant bank, and made and delivered to it a note for $2,200.   On the same day, the bank took from Carr a sealed instrument, duly executed, reciting the different steps of the transaction up to that date, and reciting that "the agreement between the bank and myself is that the said deed described above shall be held as security until this note of ($2,200) two thousand two hundred dollars, and all renewals thereof and interest on the same, is fully paid."   This instrument has never been recorded.   On January 20, 1902, Carr conveyed to the Commercial Bank of Augusta, for the sum of $1,950, the lot of land above referred to, reciting in his conveyance that it was made subject to a deed to the Georgia Railroad Bank to secure a loan of $2,000.   This deed was recorded May 22, 1902.   The Commercial Bank of Augusta acquired its transfer of the property from Carr in good faith and without notice of any lien or claim thereon, except the indebtedness of $2,000 just mentioned.   On March 31, 1903, the Commercial Bank sold and conveyed to Frank E. Fleming, the plaintiff, all its right, title and interest in and to said lot.   On May 1, 1903, Fleming tendered to the Georgia Railroad Bank all the balance of principal, interest, and other rightful charges against said lot accruing under the note of November 25, 1901, for $2,200 and under the sealed instrument given to that bank on that day, at the same time demanding a conveyance to himself of the interest, in the property held by the Georgia Railroad Bank; but this tender was rejected and his demand refused.   That bank demands, as a condition precedent to a conveyance of its interest in the land, the payment not only of the amount tendered, but also payment of a balance due to the bank by Carr on a note for $2,250, dated January 14, 1902.   On January 20, 1902, the date of the conveyance from Carr to the Commercial Bank, neither that bank nor the plaintiff had any knowledge or notice of any kind of Carr's note to the Georgia Railroad Bank for $2,250, dated January 14, 1902.   Taxes of the City of Augusta for the year 1902 were assessed on real property in the names of those who owned it or were supposed to own it on January 1, 1902, and the Georgia Railroad Bank did not have the land assessed in its name, but the same was assessed in the name of Antoine P. Carr.   The plaintiff stated in his petition that he made a continuing tender of the amounts due on the

note and under the sealed instrument of November 25, 1901, and prayed that the defendant bank be required to accept such tender and make to him a conveyance of all its interest in the land. Attached as exhibits to the petition were copies of the sealed instrument given to the Georgia Railroad Bank by Carr on November 25, 1901, the last note which he gave to it, dated January 14, 1902, and the deed from Carr to the Commercial Bank. By way of an amendment to his petition, the plaintiff further alleged that the "lot was unimproved and was never in the possession of the Georgia Railroad Bank, except as said bank held possession under said deed, and was never in the actual possession of said Carr."

The defendant demurred to the petition on the grounds, that it was without equity and set forth no cause of action; that plaintiff acquired a mere equity in the land, which was subject to any counter-claim which defendant might have against plaintiff's assignor, A. P. Carr; and that defendant had no notice of any transfer by A. P. Carr to plaintiff of his equity in the premises, and was justified in dealing with Carr as the owner of the equity. The demurrer was sustained, and the plaintiff excepts to the judgment sustaining the demurrer.

The right of the plaintiff, Fleming, to require the Georgia Railroad Bank to execute to him a conveyance of all its right, title, and interest in the lot of land, upon payment of the amount due on the $2,200 note, depends upon whether Carr could have maintained the same action which Fleming is prosecuting. Carr's deed to the Commercial Bank conveyed only his equity of redemption; and Fleming, under his deed from the Commercial Bank, acquired only such title as that bank had. It is therefore pertinent to inquire into Carr's right to compel a conveyance from the Georgia Railroad Bank, under the facts alleged in the petition. When Carr bought the land from Dickey, he procured the Georgia Railroad Bank to advance him $1,000, and agreed that the bank should take the title to the land to secure this loan. That the deed was taken as security for this loan appears conclusively from recitals in the instrument under seal given to the bank by Carr on November 25, 1901, and from the fact that the bank never went into possession of the land nor returned the same for taxes. The writing just mentioned further recited, that

Carr had, on that date, borrowed from the bank $2,200, which amount was to become due thirty days after date, and that the agreement between him and the bank was that this deed should be held as security until a note for $2,200, given the bank by Carr, and all renewals thereof and interest on same, should be fully paid.　Carr alone signed this instrument, but the bank, by accepting it, assented to its terms.　Upon the conclusion of this transaction, Carr's indebtedness was $2,200, and the bank's security was the land, the title to which was made to it by Dickey. If no subsequent transaction had occurred between Carr and the bank, clearly, on the payment of the $2,200 debt, he would have been entitled to a conveyance of the land from the bank.　Carr did, it appears, pay $200 on this indebtedness.　While his interest in the land was only the equity of redemption, upon payment of the debt secured by the deed Carr or his assignee could maintain a proceeding to compel a conveyance from the bank.　Upon payment of the debt, a resulting trust would have arisen; and the bank, holding the naked legal title with no beneficial interest in the land, would be deemed the trustee of Carr.　But there was a subsequent transaction between Carr and the bank.　He procured an additional loan of $2,250, and gave the bank his note for this amount.　This last note recited that the borrower had deposited with the bank "Bill Lading Five Cars Corn," as collateral security for the payment of this and any other indebtedness.　The note also contained this clause: "The undersigned hereby agree to deposit with the said bank such additional collateral security as the said bank may from time to time demand; and also hereby give to the said bank a lien for the amount of all liabilities aforesaid, upon all the property or securities at any time given into or left in the possession of the said bank by the undersigned, and also upon any balance of the deposit account of the undersigned with the said bank."　This stipulation, the defendant contends, created an obligation on the part of Carr to pay all his indebtedness, — both the original indebtedness connected with the purchase of the land from Dickey and the indebtedness evidenced by the note containing the stipulation, — before he could have a conveyance of the land from the bank.　The soundness of this contention rests upon the meaning of the clause of the note which we have quoted.　The language clearly refers to

personalty or choses in action capable of physical delivery. The note was filled out on a printed form, and what follows indicates that the clause relied on could not have been intended to refer to any class of securities except those capable of hypothecation by manual delivery. Provision is made in the note for the sale of the "securities" at any broker's board, at public or private sale, without notice,— such a provision as is usually made for the sale of personalty or securities received in pledge. A pledge is a bailment of personal property to secure an indebtedness. A pledge can not be created by delivery of title deeds. Civil Code, § 2956; *Davis* v. *Davis*, 88 *Ga.* 191. A third person paying the purchase-money at the instance of the vendee and taking the title to the land direct from the vendor holds neither the land nor the title as pledgee. Such a transaction is the equivalent of the vendor's conveyance to the vendee, and a conveyance of the land by the vendee to the person paying the purchase-money, as security for the debt. The legal status of the deed from Dickey to the Georgia Railroad Bank is that of a security deed, and the debt thereby secured is the money advanced by the bank to Carr at the time he executed the agreement of November 25, 1901. *Dotterer* v. *Freeman*, 88 *Ga.* 479. No other debt is secured thereby, and nothing in the last note indicates that any additional indebtedness was to be included. The clause in the note that Carr thereby gives " to the said bank a lien for the amount of all the liabilities aforesaid upon all the property or securities at any time given into or left in possession of the bank" by him, can not create a mortgage on the land, because of lack of description of the land. We are therefore of the opinion that no contract was created by the last note whereby the additional loan evidenced thereby was to be included in the indebtedness secured by the deed from Dickey to the bank. And Carr or his assignee, upon payment or tender of the amount due on the note for $2,200, will be entitled to a conveyance from the bank of its right and title in and to the land. Accordingly, we hold that the petition set out a good cause of action, and that the court erred in sustaining the demurrer and dismissing the petition.

*Judgment reversed. All the Justices concur, except Lamar, J., disqualified.*