## MEL BLIED v. GEORGE F. BARNARD.[1]

December 22, 1911.

Nos. 17,457—(238).

**Jury trial — special questions — reserving cause for decision of court.**

In an action at law, in which a jury trial is a matter of right, either party is entitled to a general verdict under proper instructions of the trial court, and it is error, in the absence of consent of parties, to direct the jury to answer special questions and not to return a general verdict; the court reserving the cause for trial and decision by the court.

**Waiver of general verdict.**

It does not appear that plaintiff in this case waived his right to a general verdict, or consented to a special finding of the jury and a reservation of the cause for trial and decision by the court.

**Replevin.**

It does not conclusively appear that plaintiff was not entitled to recover in this action.

Action in the district court for Steele county to recover possession of a stock of dry goods or for $3,000, the value thereof. The amended answer admitted possession of the goods at the time of the commencement of the action, and that they were of the value of $3,000; alleged that defendant received a bill of sale from plaintiff for the stock of goods; that about January 15, 1910, defendant as a consideration for the goods had transferred a piece of land in Clackamas county, Oregon, to plaintiff; that the title was imperfect, but that defendant had issued a bond in the sum of $5,000, conditioned that defendant should perfect title within thirty days from January 15, 1910; that at the end of the thirty days when the title was not completed he gave another bond for $5,000, conditioned that the title should be perfected within a year; that the title had been perfected and that defendant was entitled to the property. The reply admitted that for a pretended transfer of the goods defendant gave

[1] Reported in 133 N. W. 795.

plaintiff a certain writing which defendant claimed was an abstract of title to the land mentioned in the answer; admitted that defendant offered plaintiff a bond, but alleged that the bond was returned for the reason that it was not sufficient as provided in the contract; and denied every allegation in the answer.

The case was tried before Childress, J., who submitted to the jury the special question found in the sixth paragraph of the opinion. The jury answered the question in the affirmative. The court subsequently filed its findings, and ordered judgment in favor of plaintiff for his costs and in favor of defendant for a return of the property. Plaintiff's motion to vacate the findings and order for judgment was denied. From the order for judgment in favor of defendant for the return of the property, and from the order denying the motion, plaintiff appealed. Reversed and new trial granted.

*James A. Peterson* and *H. F. Woodard,* for appellant.

*J. A. & A. W. Sawyer,* for respondent.

BUNN, J.

This action was in replevin to recover the possession or value of a stock of dry goods alleged to be unlawfully detained by defendant. The goods were taken from defendant's possession on the writ. The case came on for trial before the court and a jury, and the ultimate question to be decided was whether plaintiff or defendant was entitled to the stock of goods. The facts developed at the trial, stated only with sufficient detail to indicate the issues, were as follows:

January 15, 1910, plaintiff sold to defendant the stock of dry goods in question, in exchange for thirty-four acres of land in Oregon. A bill of sale of the goods was executed and delivered, as was a deed of the land. The record title not being perfect, defendant executed and delivered to plaintiff a bond conditioned to perfect such title within thirty days, or in case he failed to do so it was agreed that defendant might furnish a "good and sufficient" bond conditioned to perfect such title within one year, "said bond to be subject to the approval of Mel Blied, and satisfactory to him."

To secure the performance of the bond so executed and delivered

to plaintiff, defendant on the same day, January 15, 1910, executed and delivered to plaintiff a chattel mortgage on the stock of goods. This chattel mortgage forms the basis of plaintiff's claim to the goods in this action. It recites that it is given to secure the conditions of the bond executed by defendant, provides that it shall be void if such conditions are performed, and that "if said party of the second part shall at any time deem himself insecure" he may take possession of the property, but that as long as the conditions of the mortgage are fulfilled the first party is entitled to possession.

Defendant was unable to perfect the record title in thirty days, and on February 8, 1910, executed a bond conditioned to perfect such title within one year from January 15, 1910. This bond was executed by defendant and his wife, and was secured by a mortgage executed by them. Plaintiff refused to accept the bond, and a second one was on February 12, 1910, executed by defendant, his wife, and one Emily J. Barnard, conditioned to perfect such title within one year from January 15, 1910. This bond was refused by plaintiff, and shortly thereafter this action was brought.

It is clear that the questions before the trial court and jury for decision were these: (1) Was the title to the Oregon land in fact perfected at the time of the trial? (2) Did the giving of the bond February 12, 1910, operate to discharge the chattel mortgage? (3) If both of the above questions were answered in the negative, and the chattel mortgage was in force, did plaintiff have reasonable grounds for believing himself insecure?

The trial court, instead of deciding the questions of law and instructing the jury in accordance with its decision, directed the jury to answer the question, "Did the plaintiff have reasonable grounds to believe himself insecure at the time of the commencement of this action?" and not to return a general verdict.

1. That plaintiff was entitled to a jury trial and to a general verdict is beyond doubt. It was an action at law, in replevin, and it is immaterial that questions of law, as well as questions of fact, were involved. It was the duty of the court to decide the law questions

and to instruct the jury accordingly. If the court considered that plaintiff had failed to make a case for the jury, it was its duty to direct a verdict for defendant. No statute or rule of practice that we are aware of authorizes the practice adopted in this case, unless it is agreed to by the parties. The first of the questions above stated was clearly a question for the court; the second question, whether the bond given discharged the chattel mortgage, could only be answered by a decision of the question whether plaintiff acted arbitrarily in refusing to accept the bond.

It is the law, we think, that plaintiff was not entitled to refuse the bond without cause or arbitrarily, notwithstanding that it was agreed that such bond was to be subject to the approval of plaintiff and satisfactory to him. Plaintiff's theory evidently was that he was not obliged to accept a bond at all, or at least that he might refuse to accept any bond tendered, whether it was actually sufficient or not. But clearly this theory is wrong. Plaintiff's refusal must be in good faith, and upon some ground other than mere sentiment or suspicion.

We think that this question was on the evidence one of fact, and that it does not conclusively appear either that the refusal was arbitrary or that it was based upon sufficient grounds. It follows that the trial court should have decided the question whether defendant had perfected the title before charging the jury, and, in case it decided such question in plaintiff's favor, should have submitted the case to the jury on the other questions, under proper instructions, for a general verdict.

2. Did plaintiff waive his right to a general verdict, and consent, either expressly or by implication, to the jury deciding only the question of "insecurity," and the subsequent trial and determination of the other issues by the court? The right to a jury trial of all or part of the issues may be waived, and the statutory method of waiving such right is not exclusive. If plaintiff's attorney consented to the course adopted, it was a waiver of plaintiff's right to a jury trial. But the converse of this proposition is undeniably true. If plaintiff's attorney did not, either expressly or by implication, consent to a reservation of certain issues and their subsequent trial and deci-

sion by the court, there was no waiver of the right to a trial of all the issues by a jury.

It was evidently plaintiff's position on the trial that he was entitled to a verdict, if plaintiff had reasonable grounds for believing himself insecure; that is, that the other questions must be determined in his favor as a matter of law. It was the position of defendant's attorneys that the only issue on trial at this time was the question of "insecurity," and that the other issues would be tried and determined by the court at some future time, on further evidence to be taken.

We have considered very carefully the record of the proceedings on the trial and the subsequent proceedings, as shown by both the original and supplemental return, and reach the conclusion that plaintiff's attorney at no time consented to the course adopted. It is claimed that this course was agreed to at an evening meeting between counsel and the court. The reporter's transcript states that it was then "agreed and understood between them that the only issue in the case to be submitted to the jury in the court's charge was whether or not plaintiff had grounds to believe himself insecure." This, we think, falls short of being an agreement to take a special finding of the jury on that question, and to reserve the case for future trial and decision by the court. It is not unusual for the trial court and counsel during the course of a jury trial to agree upon the issues to be submitted to the jury; but such an agreement alone does not contemplate dispensing with a general verdict and submission of the cause to the court for its decision, either then or at a future time.

That the agreement made was not so interpreted by either the trial court or by plaintiff's attorney appears quite clearly from the proceedings in court after the agreement was made. When the testimony was about completed, defendant's counsel asked the court to rule that defendant was not precluded from offering evidence as to the title at a future time before the court. The court so ruled, and plaintiff's counsel objected. Plaintiff moved for a directed verdict in his favor for the return of the goods that were still in defendant's possession. This motion was denied, and the court proceeded to charge the jury.

In the course of the charge, the court told the jury that the only question for its consideration was whether plaintiff had cause to declare the conditions of the chattel mortgage broken, and said that, if he did have such cause, he had a right to keep the property, but that, if he did not, defendant was entitled to a verdict. The court said: "If you find from all the evidence upon this subject that the plaintiff was justified in taking the property, then your verdict shall be for the plaintiff for a return of the property, or its value. * * * If you return a verdict for the plaintiff, it will be a verdict for the return of the property to the plaintiff, or a verdict that he is entitled to the possession of it, and for whatever you find is the value of the property in his (defendant's) possession. * * * If your verdict is for the plaintiff, then you shall also assess the value of the property that is not in his possession."

It is very clear that the trial court had no idea that a general verdict was not to be returned until counsel for defendant interrupted, objecting to a general verdict, and insisting that only the special question should be submitted, to be answered by "yes," or "no." The court then submitted the special question. Plaintiff's attorney promptly requested a general verdict, and objected to the submission of the special question; but this request was denied and objection overruled.

When the jury retired, a stay of forty days was ordered as to all proceedings on the verdict. Plaintiff's counsel then left for Minneapolis, and were not present in court when the jury returned the answer "Yes" to the special question submitted. When this answer was returned, and in the absence of plaintiff's counsel, an order reserving "the cause for further consideration by the court during the term" was entered in the court minutes. Thereafter defendant's counsel wrote to plaintiff's attorneys that the court would take up the trial of the case at the conclusion of a case then on trial; but plaintiff's attorneys were not present at the time named or thereafter, and the trial court heard further evidence offered by defendant, and subsquently made its findings on the whole case in defendant's favor.

Our conclusion is that plaintiff did not waive his right to a trial

of all the issues by a jury, or consent to the special verdict and reservation of the cause for further consideration and decision by the court.

3. We are unable to hold that it conclusively appeared from the evidence, as it stood when the jury retired, that the title had been perfected, or that plaintiff had no right to the security of the chattel mortgage. We cannot decide the case on the evidence received in the absence of plaintiff's attorneys. In view of the feeling we have that the misunderstanding between counsel and the trial court that resulted in this unfortunate situation was in some part due to an erroneous conception by plaintiff's attorneys of the questions involved, and their failure to lend their aid to clear up the difficulties, either at or after the trial, and especially in view of the wholly unwarranted aspersions in the brief on the conduct of the trial court and its motives, we feel constrained to direct that appellant be not allowed statutory costs or disbursements for printing the offending brief.

Order reversed, and new trial granted.