EVANS, Appellant, v. HEATON et al, Respondents.

(207 N. W. 659.)

(File No. 5380.   Opinion filed March 12, 1926.)

1.  **Brokers—Instructions—Where Broker's Offer to Sell, Made in March, Was Accepted in June, Whether Agreement Was Reached in March Held Not Sole Question for Jury in Action for Commission.**

    Where broker made oral offer to sell certain land in March, which was accepted in June, but owner refused to sell when broker furnished purchaser, in action for commission, court erred in submitting as sole question to jury whether owner agreed in March to pay commission if broker found purchaser.

2.  **Trial—Findings—Where Sole Jury Question Was Whether Contract to Pay Commission Was Made at Time of Broker's Offer, Court Must Submit Written Opinion of other Issues (Rev. Code 1919, Secs. 2525, 2526).**

    Where broker's offer to sell was accepted three months later, and in his action for commission sole question submitted to jury was whether agreement was reached at time of offer, court erred in entering judgment without giving decision in writing of issues not submitted, in view of Rev. Code 1919, Secs. 2525, 2526.

3.  **Brokers—Acceptance—Contracts—Landowners' Letter, Agreeing to Sell, Held Acceptance of Broker's Offer Made Three Months Before Completing Contract.**

Where broker told landowners in March that he thought he could find purchaser but would want certain commission, and asked them to notify him if they decided to sell, owner's letter in June, stating they had decided to sell, **held** to be acceptance of broker's offer, constituting completed contract.

Appeal from Circuit Court, Charles Mix County; HON. R. B. TRIPP, Judge.

Action by Patrick Evans against W. H. Heaton and another. From a judgment for the defendants, plaintiff appeals. Reversed.

*A. B. Beck,* of Lake Andes, for Appellant.

*Roy E. Willy,* of Pierre, and *Caster & Cassidy,* of Lake Andes, for Respondents.

(2) To point two of the opinion, Appellant cited: Davison v. Keller, 35 S. D. 285, 152 N. W. 106.

MORIARTY, C. The appellant brought this action to recover the sum of $1,040, which he alleges to be due to him from respondents as commission for finding a purchaser for 1,040 acres of land owned by respondents.

The complaint alleges the listing of the property with appellant, an agreement to pay $1 per acre commission for the finding of a purchaser on the terms of the listing, the production of a purchaser ready, willing, and able to purchase on those terms, the refusal of respondents to sell, and their failure to pay the agreed commission. The case was tried to a jury, and the record shows the material facts to be as follows:

The respondents are brothers, and during the year 1919 and for several years prior thereto they owned the property described in the complaint ,and used it as partners. Appellant lived in the same neighborhood for several years, but went to Waterloo, Iowa, in the spring of 1919. In the latter part of March, 1919, appellant was at respondents' farm above mentioned, and talked with the respondent Charles Heaton about finding a purchaser for the Heaton property. Charles Heaton said he would be willing to sell, but it was a partnership proposition, and he could not sell unless his brother was willing. Charles testified that he said that he was willing to sell at $50 per acre, if his brother Will would agree to it, and he testified that the appellant said "he would want $1 per acre, or something thereabouts, if he succeeded in finding a buyer."

Appellant testified that, after this talk with Charles, they talked with W. H. Heaton, the other respondent ,and that he said he was willing to sell, and that both respondents said they would pay appellant $1 per acre commission if he found them a purchaser. Respondents deny this, and say that respondent W. H. Heaton said that he was not willing to sell, and that appellant said, "Should you make up your mind to sell, write and let me know." The conflict on this point is practically the only dispute on any material point. On June 2, 1919, appellant wrote from Waterloo, Iowa, a letter addressed to the respondents and received by them. This letter contained the following statements:

"Are you folks in the notion of selling the ranch yet. I have been talking with a few men that would buy if the place would suit them after they saw it. You send me the pictures of the place. I will take good care of them, and will return them to you in good shape. If the place is for sale yet, let me know as soon as you can. This is the month to sell when everything looks its best in Dakota. If I should bring a buyer, you let me do the selling. I will look out for your interests, and will do the square thing with you. Be sure and send pictures. Was talking with a man today would like to go out next week to see the place. Be sure and write me a few lines."

On June 10, 1919, respondent W. H. Heaton wrote to appellant a letter which contained the following statements:

"Charley & I have been talking the land matter over & have agreed to sell the ranch but would like to sell our share in the live stock, in other words, the buyer to take our place & take everything & pay us $60,000. Now that is a little higher than we talked. The ranch at $50 per acre would come to $52,000; now our share in the personal property is worth about $6,500. You see that would make $58,500. * * * There is a man in Platte who wants to buy the ranch; I haven't told him yet that we would sell, in fact we haven't decided to do so until now. Will send you the pictures; come soon. * * * Now for terms a small payment down enough to make a safe deal. Will leave the man entirely to you.

"Yours truly.                    W. H. Heaton."

Immediately after receiving this letter from respondents, appellant started from Waterloo, Iowa, in company with Fedderson,

the prospective purchaser. They went to the Heaton farm, and there Fedderson inspected the land and made an invoice of the personal property. Fedderson testified that he told respondents that he would take the property at their price of $60,000, and asked them how much they wanted down, that they said $20,000, and he said he would take the property on those terms, and he testified that he was ready, willing, and able to purchase at that price and on those terms, and he further testified that two or three days later respondents told him that the deal was off, that they had decided not to sell.

[1, 2] There was no denial of any part of this evidence of Fedderson's. After the parties had rested, the court gave the jury instructions which were evidently intended to guide the jury in arriving at a general verdict. But later, on motion of respondents' counsel, the court struck from the record all the evidence as to any agreement made between the parties in March. The court then submitted to the jury a form of verdict as follows:

"Verdict of the Jury.

"Upon the request and at the direction of the court, we, the jury in the above-entitled action, answer the following questions as indicated by the word 'yes' or 'no,' following the word 'answer':

"Did the plaintiff, Evans, and the defendants Heaton enter in to an agreement the latter part of March, 1919, whereby, if Mr. Evans procured for the Heatons a purchaser for their ranch up here that has been referred to, they would give him $1 an acre for doing so? Answer: ———."

To this question the jury answered: "No."

After receiving this special verdict, no general verdict being returned by the jury, the court entered judgment in favor of the respondents, without entering any findings of fact or conclusions of law, or any decision except the judgment itself. All these acts of the court were duly excepted to, and are assigned as error.

[3] The learned trial court erred in striking out the evidence as to the conversations in March. The court evidently adopted an erroneous theory as to those conversations. Respondents admit that, in those conversations, appellant told them that he thought he could find them a purchaser and that he would want a commission of $1 per acre, or thereabouts, for so doing. They

also admit that when appellant was about to leave, he told them to write him if they made up their minds to sell.

Properly analyzed, this was an offer of appellant, left open for acceptance by respondents. In their letter of June 10th they accepted this proposition, and the original offer and the acceptance made a completed contract. This being true, the trial court erred in striking out the evidence as to the conversations in March. It also follows that the trial court erred in submitting, as the sole question for the jury, the special interrogatory, whether the respondents, in March, entered into an agreement to pay appellant $1 per acre for finding a purchaser. As this was not the only material question in the case, and was not essential to appellant's right to recover, it was error to enter judgment on this special verdict, without the giving of a decision in writing of the issues involved, and which were not submitted to the jury. ·

Upon the trial of any question of fact by the court, its decision must be given in writing, in which decision the facts found and these conclusions must be separately stated. Sections 2525 and 2526, Revised Code; Missouri River Telephone Co. v. City of Mitchell, 116 N. W. 67, 22 S. D. 191; Thomas v. Issenhuth, 100 N. W. 436, 18 S. D. 303; Byrne v. McKeachie, 137 N. W. 343, 29 S. D. 476; Ewing v. Lunn, 115 N. W. 527, 22 S. D. 95; Ward v. Campau, 125 N. W. 734, 161 Mich. 85.

· Because of the errors mentioned, the judgment and order appealed from are reversed.

MISER, Circuit Judge, sitting in lieu of SHERWOOD, J.

Note.—Reported in 207 N. W. 659. See, Headnote (1), American. Key-Numbered Digest, Brokers, Key-No. 88(2), 9 C. J. Sec. 129; (2) Trial, Key-No. 387(1), 38 Cyc. 1951; (3) Brokers, Key-No.. 40, 9 C. J. Sec. 58.

On Rev. Code 1919, Secs. 2525 and 2526, see Annotations Kerr's Cyc. Code 1920, Code Civ. Pro. Secs.632 and 633.